UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                              Plaintiff

v.                                               Criminal Action No. 3:19-cr-00070-RGJ

GARY BRADFORD                                                         Defendant

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant, Gray Bradford's ("Bradford"), Motion to Suppress Evidence and Request for a Hearing ("Motion"). [DE 13]. The Unites States responded. [DE 16]. The Court held a suppression hearing, [DE 18] and both parties filed supplemental briefs [DE 21, 22, 23]. This matter is now ripe. For the reasons below, the Court **DENIES** the Motion to Suppress [DE 13].

## BACKGROUND

In the early morning, LMPD officer, Stephen Roederer ("Officer Roederer") pulled his marked police cruiser behind a black Chevy parked outside 4329 Lonsdale Avenue, a known drug house. [DE 22 at 83]. Officer Roederer did not activate his lights. [DE 24, Government Exhibit 1: Officer Roederer Body Camera Video ("Video") at 0:26]. Officer Roederer saw two individuals, later identified as Jerry Cook ("Cook") and Bradford, walking around outside the vehicle. [DE 22 at 83–84; Video at 0:32–50]. Officer Roederer had followed the vehicle for several blocks and had seen Bradford operating the vehicle. [DE 19, Transcript of Suppression Hearing Feb. 10, 2020 ("Tr.") at 65:15–19; Video at 7:52–8:09]. When Officer Roederer approached the vehicle, he first spoke to Cook and asked him to "step over here" toward the vehicle. [Video at 0:40–45]. Bradford was standing by the passenger side door. [*Id.* at 0:45–50].

1

Officer Roederer talked with Bradford. While talking with him, Officer Roederer asked Bradford to take his hands out of his pockets and explained, "You're good man. I just don't know what you have in your pockets. Fair enough." [*Id.* at 0:51–56]. He then asked Bradford if he lived in the area, and Bradford responded that he was "just chilling." [*Id.* at 0:54–1:02]. Officer Roederer asked Bradford if the vehicle was his, and Bradford responded that it was his girlfriend's. [*Id.* at 1:10–15]. Officer Roederer asked Cook if he had a license, and Cook responded that he did not. [*Id.* at 1:44–50]. Officer Roederer collected Cook's name and birthdate and then asked Bradford if he had his license. [*Id.* at 2:30–55]. Bradford responded that he did not have his license on him. [*Id.*]. Officer Roederer asked Bradford for his name and birthday, which Bradford provided. [*Id.* at 2:55–3:28].

During this initial encounter Officer Roederer did not restrain Bradford or Cook in any way or conduct any type of search. Officer Roederer maintained a friendly and conversational tone. He also did not take Bradford's phone from him, and he permitted Bradford to answer an incoming call and make another phone call while collecting the identifying information from Bradford and Cook. [*See, e.g.*, *Id.* at 3:18–30].

About one minute into his initial encounter Officer Roederer appeared to radio for backup by reading his location into his radio. [*Id.* at 1:35–43]. He did not suggest to Bradford or Cook that additional officers would be coming or reveal that he had called for backup. About two minutes later, and after Bradford admitted that he did not have his license, three more officers arrived on scene in two other police cruisers. [*Id.* at 3:56]. At this point, there were four uniformed officers and three police cruisers. Once the other officers arrived, Officer Roederer returned to his car and ran Bradford's name. [*Id.* at 4:00–5:50; DE 22 at 84]. The other officers continued to talk with Cook and Bradford. [*Id.*]. Officer Roederer's search of Bradford's name revealed that he

had a suspended license. [*Id.*]. As Officer Roederer returned to where Cook and Bradford were standing, another officer was conducting a pat down on Cook and discovered two needles in his possession. [*Id.* at 5:54–6:25]. Office Roederer asked Bradford to "stand up for me" so that he could conduct a pat down. [*Id.* at 6:18– 6:21]. Bradford said, "you're good man," and stood as Officer Roederer instructed him. [*Id.* at 6:21–25]. At this point, Officer Roederer asked Bradford for his phone, which Bradford handed to him and he placed on his police cruiser. [*Id.*].

During the pat down, Officer Roederer found two shotgun shells in Bradford's pants pocket. [*Id.* at 7:14]. Officer Roederer then asked Bradford if he could search the car. [*Id.* at 8:46]. Bradford said that he could, and Officer Roederer conducted a search. [*Id.* at 8:46–10:15]. In the back seat of the vehicle, Officer Roederer found a shot gun. [*Id.*]. Officer Roederer placed Bradford in handcuffs. [*Id.* at 11:14]. It is not clear from the video or evidence presented whether Bradford was advised of his *Miranda* rights. Bradford was charged with possession of a handgun by a prohibited person. [DE 1].

## DISCUSSION

"It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriquez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir. 1979)). The defendant's burden extends to both "the burden of production and persuasion." *United States v. Patel*, 579 F. App'x 449, 453 (6th Cir. 2014).

Bradford moves to suppress the shotgun shells found in his pocket and the shotgun found in his car as fruits of an illegal search. Bradford argues that he was seized for purposes of the Fourth Amendment when the officers asked to search his person and his vehicle. [DE 21 at 76–

3

77]. Thus, his consent to search his person and his vehicle were not voluntary and the consent was invalid. [*Id.* at 80–81]. He also argues that consent was necessary because there was no probable cause to search either himself or his vehicle at the time the officers conducted the searches. [*Id.* at 78–80].

    A. <u>Initial questioning did not constitute a seizure</u>.

The constitutional protection of the Fourth Amendment "applies only if a person is 'seized' within the meaning of the Fourth Amendment." *United States v. Williams*, 615 F.3d 657, 663 (6th Cir. 2010). For that reason, the Court will begin with whether Bradford was seized. An encounter between a person and police can constitute a seizure when "circumstances surrounding the encounter [show that] the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id*. (internal quotations and citations omitted). "These include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Damitres Ward*, 756 F. App'x 560, 564 (6th Cir. 2018) (internal citation omitted). That said, "the Fourth Amendment is not implicated when officers merely ask suspects for identification or approach them in public spaces and ask questions in non-threatening ways." *Id.* at 564–65 (a two-minute conversation on a public sidewalk where the officer asked the defendant for his ID, whether he was engaged in illegal activity, and whether he owned a nearby SUV was not a seizure); *see also United States v. Waldon*, 206 F.3d 597, 603 (6th Cir. 2000) (no seizure where officer "simply approached [defendant] at the bus stop, mentioned that he was investigating a bank robbery, and asked Waldon what he was doing in the area"); *United States v.*

*Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) (no seizure when officer said that he would "like" to defendant's ID)].

Bradford was not "seized" at the time Officer Roederer asked him for his identification and Bradford responded that he did not have identification. When Officer Roederer pulled behind Bradford's vehicle, he did not start his police cruiser lights and had not conducted a traffic stop. When Officer Roederer first interacted with Bradford, he was the only officer at the scene. Officer Roederer maintained a conversational tone, and his only direction to Bradford was to keep his hands out of his pockets. [Video at 0:51–56]. Officer Roederer also still allowed Bradford to possess, make, and receive calls on his cellphone. [*See, e.g.*, *id.* at 3:18–30]. Less than two minutes into the conversation and while he still was the only officer at the scene, Officer Roederer asked Bradford if he had his license. [*Id.* at 2:30–55]. Bradford responded that he did not. [*Id.*].

At this point in the encounter, Officer Roederer "merely ask[ed] [Bradford] for identification," which courts repeatedly have held does not constitute a seizure. *See, e.g.*, *Damitres Ward*, 756 F. App'x at 565. No other circumstances support that a seizure occurred. Thus, at the time that Bradford stated he did not have his license, Bradford was not seized. The Court need not determine whether at any point later in the interaction Bradford was seized, because following Bradford's admission that he did not have his license Officer Roederer had probable cause to arrest Bradford.

The crux of Bradford's argument in his Reply is that by the time Officer Roederer learned that Bradford's license was suspended, he was already seized. [DE 23 at 91–92]. Yet this is irrelevant because Officer Roederer had probable cause to arrest Bradford much earlier, as discussed below. Once Bradford admitted he did not have his license on him, Officer Roederer

5

could arrest Bradford for failing to have identification on his person while operating a vehicle. *See* KRS § 186.510; KRS § 186.990(3).

B. Officers had probable cause to arrest Bradford prior to search.

"[U]nder federal law, a police officer can arrest an individual so long as the officer has 'probable cause to believe that a misdemeanor offense has been committed in his presence.'" *Campbell*, 486 F.3d at 958 (quoting *United States v. Williams*, 170 F. App'x. 399, 402 n.3 (6th Cir. 2006)). In Kentucky, failing to have a license in your possession while operating a vehicle is a Class B misdemeanor. *See* KRS § 186.510; KRS § 186.990(3). Officer Roederer observed Bradford operating the vehicle before his interaction with him.[1] Once Bradford admitted that he did not possess his license, Officer Roederer had probable cause to arrest him.[2]

Because Officer Roederer had probable cause to arrest Bradford, he neither needed to obtain Bradford's consent nor did he need probable cause to search him or his vehicle.

C. Searches of vehicle and Bradford were proper.

Before Bradford's arrest, Officer Roederer searched Bradford and Bradford's car. Bradford argues that both searches were unconstitutional, and the gun and ammo found should be suppressed. "The inevitable discovery doctrine allows unlawfully obtained evidence to be admitted at trial if the government can prove by a preponderance that the evidence inevitably

---

[1] Bradford argues that because "[t]here also has not been any firsthand testimony provided, or any other type of additional evidence, to support the claim that Mr. Bradford was actually seen operating the vehicle in question," the United States failed to meet its burden to show that Officer Roederer had probable cause to arrest Bradford. [DE 23 at 93]. But Officer Roederer states in the video that he saw Bradford driving "a minute ago," and gave a short description of the where Bradford had driven from. [Video at 7:52–8:09]. Officer Taylor also testified at the suppression hearing that Officer Roederer had seen Bradford operating the vehicle earlier in the night. [Tr. at 65:15–19]. "In a suppression hearing to determine probable cause hearsay evidence is admissible." *United States v. Killebrew*, 594 F.2d 1103, 1105 (6th Cir. 1979). As a result, this evidence is admissible and establishes that Officer Roederer had the requisite knowledge to arrest Bradford.

[2] Additionally, KRS § 186.620(2) makes it a Class B misdemeanor for a person to operate a motor vehicle while his or her license is suspended. KRS § 186.990(3). This provided another basis to arrest Bradford.

6

would have been acquired through lawful means." *United States v. Mohammed*, 512 F. App'x 583, 587 (6th Cir. 2013) (internal citations omitted). "[T]he doctrine is applicable where the evidence demonstrates that routine procedures that police would have used regardless of the illegal search would have resulted in the discovery of the disputed evidence." *Id*. at 587 (internal citations and quotations omitted).

Officer Roederer had probable cause to arrest Bradford for driving without his license. This basis for arrest was determined within two minutes of interacting with Bradford, before Bradford was seized, and before the search of Bradford's person or his vehicle. Thus, no matter if Bradford consented to the search, the evidence seized from Bradford's person and vehicle would have been discovered search incident to his arrest or through an inventory search of the vehicle. *See United States v. Garcia*, 496 F.3d 495, 506 (6th Cir. 2007) (evidence should not be suppressed based on the doctrine of inevitable discovery where "[h]ad the police not seized [defendant's] pager during the protective patdown, they inevitably would have seized it from his person during his subsequent arrest."); *United States v. Kimes*, 246 F.3d 800, 804 (6th Cir. 2001) ("Proof that contraband would have been detected in an inventory search that would inevitably follow seizure of a car is sufficient to invoke the inevitable discovery exception to the exclusionary rule.") (internal quotation and citation omitted); *Campbell*, 486 F.3d at 958 (gun found in defendant's car should not be suppressed because "officers are permitted to search the vehicle associated with a defendant's lawful arrest for the purpose of taking an inventory of its contents prior to impoundment, even if the police have no probable cause to otherwise search the vehicle."). As a result, under the inevitable discovery rule, the evidence should not be suppressed.

## CONCLUSION

Accordingly, for the reasons stated, **IT IS ORDERED** that Bradford's Motion to Suppress Evidence and Request for a Hearing [DE 13] is **DENIED** to the extent that it seeks to suppress evidence. This matter is set for an telephonic status conference on **April 29, 2020 at 10:15 a.m.** at the Gene Snyder United States Courthouse before the Honorable Rebecca Grady Jennings, United States District Judge.

The parties must join the call by dialing 1-877-873-8018, then give the Access Code 1726577# and when prompted, press # again to join the call. Please contact Andrea Morgan by email at andrea_morgan@kywd.uscourts.gov with your participation in this call or if you are unable to participate by Noon on 4/27/2020.


Cc: Counsel of record